IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION


Charles Benjamin "Ben" Dickerson, on behalf          )
of himself and all others similarly situated          )
                                                      )
                        Plaintiff,                    )
                                                      )
            v.                                        )
                                                      )
**TLC LASIK Centers:**                                )
                                                      )
TLC The Laser Eye Center (Institute), Inc.;          )
TLC The Laser Center (Carolina), Inc.; TLC           )
The Laser Center (Madison), Inc.; TLC The            )
Laser Center (Institute), Inc. d/b/a TLC             )
Denver; TLC The Laser Center (Institute), Inc.       )
d/b/a TLC Atlanta; TLC Laser Eye Centers             )
Oklahoma City; TLC The Laser Center (Tri-            )
Cities), Inc.; TLC The Laser Center                  )
(Massachusetts), Inc.; TLC The Laser Center          )
(Brea), Inc.; TLC Laser Eye Centers                  )       C.A. No. 6:10-cv-00685-JMC
Cleveland; TLC Laser Eye Centers Columbus;           )
TLC The Laser Center (Boca Raton), Inc.;             )       **ORDER AND OPINION**
TLC Laser Eye Centers (Pittsburgh), TLC              )
Laser Eye Centers (Fargo); Valley Laser Eye          )
Center, LLC; TLC The Laser Center                    )
(Institute), Inc. d/b/a TLC Manhattan; TLC           )
The Laser Center (Institute), Inc. d/b/a TLC         )
Garden City; TLC The Laser Center (Institute),       )
Inc. d/b/a TLC Torrance; TLC The Laser               )
Center (Northeast), Inc. d/b/a TLC North             )
Jersey; TLC Laser EyeCenters Tulsa; TLC              )
Laser Center (Northeast), Inc. d/b/a TLC             )
Rockville; TLC The Laser Center (Institute)          )
Inc. d/b/a TLC White Plains; TLC Midwest             )
Eye Laser Center, Inc. d/b/a TLC Chicagoland;        )
TLC The Laser Center (Northeast), Inc. d/b/a         )
TLC Big Sky; TLC The Laser Center                    )
(Institute), Inc. d/b/a TLC Charleston; TLC          )
The Laser Center (Institute), Inc. d/b/a TLC         )
San Antonio; TLC Laser Eye Centers Edina;            )
TLC The Laser Center (Indiana), LLC; TLC             )

The Laser Center (Institute), d/b/a TLC Ft.      )
Lauderdale; TLC The Laser Center (Institute),    )
d/b/a TLC Tampa;                                 )
                                                 )
**TLC Clinical Directors:**                      )
                                                 )
Jo Angeles, O.D.; Kristen Brown, O.D.;           )
E. Edward Carmen, O.D.; Phillip Cuva, O.D.;      )
Despina Fikaris, O.D.; J. Christopher Freeman,   )
O.D.; Jeffrey J. Genos, O.D.; Lee Ann Gertz,     )
O.D.; Rhonda Kerzner, O.D.; David Kohler,        )
O.D.; William Bruce Laurie, Jr., O.D.; Michael   )
Mariano, O.D.; Elizabeth M. McLemore, O.D.;      )
Melissa Melott, O.D.; Andrew S. Morgenstern      )
O.D.; Debbie Pian, O.D.; Mary J. Rauch, O.D.;    )
Carl J. Roth, O.D.; Susan Shin, O.D.; Stephen    )
Siegel, O.D.; Mark A. Slosar, O.D.; Thomas       )
Spetalnick, O.D.; Derek Van Veen, O.D.;          )
Cynthia Yaeger, O.D.; Individually and in their  )
capacity as Clinical Director for TLC The Laser  )
Eye Center (Institute), Inc.;                    )
                                                 )
**TLC LASIK Surgeons:**                          )
                                                 )
Jodi Abramson, M.D.; Alberto Aran, M.D.;         )
Robert Arffa, M.D.; David K. Aymond, M.D.;       )
David Boes, M.D.; Stan Braverman, M.D.;          )
Stephen Brint, M.D.; Barry Concool, M.D.;        )
Charles Davis, M.D.; Eric Donnenfeld, M.D.;      )
Martin Fox, M.D.; David Hunter, M.D.;            )
Scott Jaben, M.D.; Jeffrey Machat, M.D.;         )
Peter Mogyordy, M.D.; John Oster, M.D.;          )
George Pardos, M.D.; Edward Perraut, M.D.;       )
Louis Probst, M.D.; Randall Rabon, M.D.;         )
Jeff Robin, M.D.; Roy Rubinfeld, M.D.;           )
Stephen Slade, M.D.; Mark Speaker, M.D.;         )
Robert Spector, M.D.; Nancy Tanchel, M.D.;       )
Brad Taylor, M.D.; Gregory Temas, M.D.;          )
Stewart Terry, M.D.; Mark E. Whitten, M.D.;      )
Larry Womack, M.D.;Wendell Wong, M.D.;           )
Jonathan Woolfson, M.D.;                         )
                                                 )
**TLC Management:**                              )
                                                 )
Brian Andrew, Esq.; Stacey Anne Lerum;           )

Bob May, Esq.; John Potter, M.D.,      )
                                     )
              Defendants.     )
_____ )

     This matter is before the court on all Defendants TLC LASIK Centers, TLC Clinical Directors, TLC LASIK Surgeons, and TLC Management's Motions to Dismiss Plaintiff's Amended Complaint [Docs. 27, 63, 75, 124, 128, 209, 213, 247, 248, 255, 281, 291, and 300].[1]  Extensive memoranda in support of and in opposition to these motions have been filed by the parties and the court heard oral arguments from the parties on December 29, 2010.  Based upon the record before the court and after having considered the arguments of counsel, Defendants' Motions to Dismiss are granted.

## FACTUAL BACKGROUND

     Plaintiff Charles Benjamin "Ben" Dickerson ("Plaintiff") brings this action as a putative class representative alleging causes of action for violations under the Racketeer Influenced and Corrupt Organization Act ("RICO") and declaratory and equitable relief relating to certain medical records of the putative class members against the individual and corporate Defendants who for the sake of

---

     [1]Defendants Jo Angeles, Kristen Brown, E. Edward Carmen, Phillip Cuva, Despina Fikaris, J. Christopher Freeman, Jeffrey J. Genos, Rhonda Kerzner, William Bruce Laurie, Jr., Michael Mariano, Elizabeth M. McLemore, Andrew S. Morgenstern, Debbie Pian, Mary J. Rauch, Carl J. Roth, Susan Shin, Stephen Siegel, Mark A. Slosar, Thomas Spetalnick, and Brad Taylor were dismissed from this action pursuant to Fed. R. Civ. P. 41(a)(2) without prejudice to any party and upon no admission of wrongdoing by any party.  Because Defendants David Kohler, Derek Van Veen, and Cynthia Yaeger remain parties to this matter, the court addresses their Motion to Dismiss [Doc. 291] as outlined herein.  Defendant Taylor's Motions to Dismiss [Docs. 75, 300] are dismissed without prejudice in accordance with the Order of Voluntary Dismissal consented to by the parties and entered by the court on February 1, 2011.

convenience are listed in four groups - the TLC LASIK Centers, TLC Clinical Directors, TLC LASIK Surgeons, and TLC Management.[2]

TLC The Laser Eye Center (Institute), Inc. operates laser vision correction centers in many locations throughout the country. Plaintiff alleges that, from 1998 through 2003, Defendants were responsible for the performance of laser-in-situ keratomileusis ("Lasik") surgery on a substantial number of patients who were not medically acceptable candidates for the surgery because of various contraindications for the procedure. Dr. Jonathan Woolfson performed laser vision correction surgery on Plaintiff at a TLC Center during this period and Plaintiff alleges he developed a post-surgical condition known as ectasia, generally described as an instability or bulging of the cornea. He alleges this is a complication from Lasik surgery that may occur, in some cases, over an extended period of time after surgery and he exhibited conditions before his surgery that disqualified him as a candidate for Lasik surgery. Plaintiff further contends that Defendants were aware that he and others were poor candidates for the surgery and failed to inform them of important medical information, including actual diagnoses, which would have mitigated or prevented further damage to their vision. Plaintiff's counsel acknowledges that any claim for personal injury arising from these limited facts would be appropriately pursued as a medical malpractice action. However, Plaintiff alleges that Defendants' wrongdoing extends beyond mere medical malpractice.

---

[2]Plaintiff contends that the substance of this case arises from discoveries made during the prosecution of two state court medical malpractice cases currently pending in the Court of Common Pleas, Greenville County, South Carolina, *Hollman v. Woolfson, et al.*, C.A. No. 2007-CP-23-2347 and *Carter v. Nimmons, et al.*, C.A. No. 2007-CP-23-7587. The original plaintiff John Hollman and certain TLC Defendants have been involved in litigation for several years. On May 14, 2010, Plaintiff's Complaint was amended [Doc. 96]; wherein Charles Benjamin "Ben" Dickerson was substituted as the named Plaintiff.

Plaintiff claims that Defendants prepared and maintained risk management files on each patient without the patients' knowledge. In the Amended Complaint, Plaintiff alleges that Defendants engaged in a fraudulent scheme featuring:

a) Creation of a system to identify these patients subjected to substandard LASIK surgeries without informing the patient of his/her condition or cause;

b) Use of that system to monitor the patients' condition without the knowledge and/or consent of the patient;

c) Maintenance of a separate file for each patient outside of the typical medical records of the patients for purposes of identification, monitoring and/or control of these patients and the risk posed to the Defendants' assets;

d) Delay both in treatment of and discovery by the patient of his/her medical conditions;

e) Communication of false representations to the patients concerning the use of new LASIK equipment and surgeries to enhance or correct vision in the patients when the Defendants knew the patients were not candidates for LASIK surgery;

f) The periodic scheduling, canceling and rescheduling of the LASIK surgery described above in order to create delay and buy time until the expiration of patients' rights;

g) Misrepresentation of the patient's true medical condition and cause;

h) Withholding of the information and diagnosis of known surgery induced eye condition from the patient;

i) Use of the Lifetime Commitment Contract ["LTC"] to cover costs of treatments, examinations, glasses, contact lenses and medicines as a method to keep patients at TLC facilities and physicians, along with representations that such conduct would continue for the life of the patient;

j) Predetermined decision by Defendants that the LTC contract benefits described above would be withdrawn or discontinued when patients' risk to Defendants expired;

k) Creating and perpetuating a separate file on the patients which included medical diagnosis, treatment options and risk information not contained in the patients' medical records;

l) Ongoing efforts by Defendants to keep the patients at TLC facilities by discouraging outside consultations or physician intervention;

m) Obtaining releases for nominal consideration for some patients after the expiration of the patients' rights, said expiration caused by the actions of Defendants; and

n) Intentional misrepresentation of the patients' true medical conditions through misleading diagnosis and dissemination of medical information and advice and/or the omission of necessary medical information, advice and/or diagnosis.

*See* Amended Complaint at ¶ 43.

Plaintiff further alleges that Defendants concealed from him and the class members their true

diagnoses by taking the following steps:

That, specifically as to Ben Dickerson and all other class members, Defendants:

a) Created a separate file of medical information and used this file to communicate information about him without his knowledge or consent and for purposes contrary to his best medical treatment and patient rights;

b) Failed to disclose his medical diagnosis and cause until after expiration of his right to bring a claim and further specifically hid the actual diagnosis of ectasia thereby exacerbating the disease and causing additional injury;

c) Failed to treat his known surgery induced condition in order to delay discovery until the expiration of his right to bring a claim;

d) Advised Ben Dickerson that he was a LASIK surgery candidate when Defendants knew such representation was false;

e) Repeated scheduling, canceling and rescheduling of Ben Dickerson for LASIK surgery upon representing that new technology existed and without Defendants disclosing their real reasons for such tactics and, in particular, without disclosing to Dickerson that he was not a candidate for LASIK surgery;

6

f) Failed to disclose Ben Dickerson's correct medical condition to him and placing erroneous or misleading medical information in his medical records;

g) Paid for cost of medical treatment, glasses and contact lenses and agreed to pay for travel and associated expenses under the Lifetime Commitment Contract program while repeatedly representing that these types of benefits would continue for life;

h) Following the expiration of Dickerson's right to pursue a claim, discontinuing his lifetime commitment benefits and he was no longer viewed as a risk to company assets;

i) Forever hiding his true diagnosis in an effort to mitigate potential malpractice suits; and

j) Illegally and without the patient's permission, disseminating his medical records to physicians and risk managers throughout the country in furtherance of the fraud and scheme.

*See* Amended Complaint at ¶ 44.

The systems described by Plaintiff were designated as the "Complex Case System" and the "Advocacy Program." They were eventually merged into a single database which was allegedly transferred to and reviewed by various individuals associated with TLC. Defendants used the database to monitor information for possible liability exposure arising from Defendants' performance of Lasik surgery on various patients. Plaintiff's Amended Complaint claims that Defendants, using this database, were involved in a scheme "designed to hide the patients [sic] true condition and to manage the patients' expectations until that patient no longer posed a risk to Defendants' assets because of the expiration of the statute of limitations governing the patient's claim. The Defendants' fraudulently and/or negligently misrepresented facts to induce the class members to use their laser facility." Amended Complaint at ¶ 50. Plaintiff contends that Defendants' actions were illegally taken to disguise their wrongdoing and to reduce the likelihood of legal action. Conversely, Defendants argue that the creation, use, and maintenance of such system

7

is a legitimate risk management tool and that they owe no liability to Plaintiff.  Based on Defendants'

actions in creating and utilizing the database without the consent and knowledge of the patients,

Plaintiff brought this action under the civil RICO statute and for declaratory and injunctive relief.

All Defendants filed motions to dismiss Plaintiff's Amended Complaint on the grounds that

Plaintiff failed to state a claim under RICO and failed to state a claim for declaratory and injunctive

relief.[3]  The individual Defendants also moved for dismissal on the basis of lack of personal

jurisdiction.  However, the parties agreed to defer any argument and decision on the jurisdictional

matters pending resolution of the substantive issues currently before the court.

### STANDARD OF REVIEW

For a complaint to survive a motion to dismiss, the Federal Rules of Civil Procedure require

that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2).  Although Rule 8(a) does not require "detailed factual allegations," it requires

"more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*,

---U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555-57 (2007)), in order to "give the defendant fair notice ... of what the claim is and the grounds

upon which it rests," *Twombly*, 550 U.S. at 555 (internal citations omitted). Stated otherwise, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). A claim is

facially plausible "when the plaintiff pleads factual content that allows the court to draw [a]

_____

[3]Defendants' motions also raised other grounds for dismissal including, but not limited to, Plaintiff's alleged failure to meet class certification requirements.  However, Defendants clarified and narrowed the scope of their motions to the issues addressed in this order during the hearing on this matter.

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint alleging facts which are "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955) (internal quotation marks omitted).

In evaluating a motion to dismiss, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir.1996). The court may consider only the facts alleged in the complaint, which may include any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial notice. *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the court must accept the plaintiff's factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pled with factual support need only be accepted to the extent that "they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950. A court may dismiss a complaint where "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999).

DISCUSSION

## I.     Racketeer Influenced and Corrupt Organization Act

Defendants contend, in large part, that Plaintiff's Amended Complaint is merely an attempt to transform a medical malpractice claim into a RICO claim. However, even assuming that Plaintiff's goal is not the pursuit of an alternative recourse for medical malpractice as Defendants

9

allege, Defendants further contend that Plaintiff has failed to prove a pattern of racketeering activity. Defendants also question the sufficiency of Plaintiff's allegations to establish the structure of the alleged enterprise and challenge Plaintiff's ability to establish cognizable damages.

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ." 18 U.S.C. § 1962(c) (2006). To state a RICO claim, a plaintiff must sufficiently plead facts tending to demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Recovery under RICO may only be had by a "person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c).

**A. Pattern of Racketeering**

Defendants allege that Plaintiff's claims fail because they do not allege a pattern of racketeering activity.

To establish a pattern of racketeering activity, a plaintiff must show two or more predicate acts of racketeering occurring within a ten-year period. 18 U.S.C. § 1961(1) and (5). Racketeering activity consists of a violation of a specified state crime or federal statute or an act indictable under federal mail or wire fraud statutes. 18 U.S.C. § 1961(1). A plaintiff is required to "show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. North-western Bell Tel. Co.*, 492 U.S. 229, 239 (1989). This requirement represents an acknowledgment of the legislative intent to curtail long-term criminal conduct through the RICO Act. *Id*.

10

The Fourth Circuit consistently employs a "continuity relationship plus test" in evaluating the existence of an ongoing criminal enterprise in RICO actions to "prevent [the statute's] harsh sanctions, such as treble damages, from being applied to garden-variety fraud schemes." *Eplus Tech., Inc. v. Aboud*, 313 F.3d 166, 181-82 (4th Cir. 2002). "'Continuity' is both a closed and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *H.J. Inc.*, 492 U.S. at 241. To allege open-ended continuity, a plaintiff must show "a reasonable expectation that the racketeering activity will extend indefinitely into the future." *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 318 (4th Cir. 2010). "Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case." *H.J. Inc.*, 492 U.S. at 241. Racketeering activity which has a built-in ending point generally does not demonstrate the necessary threat of long-term, continued criminal activity. *See GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001)*; see also Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 186 (2d Cir. 2008) (holding "a serious, but discrete and relatively short-lived scheme ... insufficient to establish open-ended continuity" (internal quotation marks omitted))*.* A plaintiff's conclusory recital of the RICO statute in a complaint will be insufficient to meet the necessary requirements to bring otherwise common fraudulent conduct within the purview of the RICO Act. *See GE Inv. Private Placement Partners II,* 247 F.3d at 551; *and Al- Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) (advising caution in preserving a "distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity").

11

Plaintiff founds his claim of Defendants' racketeering activity on predicate acts of mail and wire fraud. Mail fraud requires a showing of "(1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme." *Pereira v. United States*, 347 U.S. 1, 8 (1954). The elements of wire fraud are similar, but involve the use of electronic or telephonic communication. Plaintiff attempts to plead multiple instances of mail and wire fraud against certain Defendants. Specifically, Plaintiff alleges "[o]n February 22, 1999, Defendant Kohler faxed and mailed patient records and private health care information to the enterprise clinical affairs office for purposes of entering the plaintiff into the Complex Case system and secretly tracking his condition." Amended Complaint at ¶ 64. Plaintiff further contends "[o]n August 25, 1999, Defendant Machat created a LASIK procedure report which falsely indicated that he had ruled out a possibility of keratoconus, . . . which was mailed in furtherance of the conspiracy on August 25, 1999 [sic] to Defendant TLC Laser Eye Center (Institute), Inc." *Id.* Finally, Plaintiff alleges "[o]n May 5, 2005, Defendant Van Veen mailed or caused to be mailed, without the patients [sic] consent and in violation of HIPAA, all of the patients [sic] medical records, to Defendant Potter for the purpose of allowing Potter to track his case and monitor the statute of limitations." *Id.*

Defendants argue that Plaintiff's pleading fails to establish a scheme to defraud. Instead, Defendants claim that they have merely established a risk management system - which Defendants contend is neither fraudulent nor illegal. Plaintiffs, on the other hand, take issue with Defendants' position. In addressing the criminal offense of mail fraud, the Fourth Circuit has indicated that a scheme to defraud may result in a deprivation of tangibles such as money or of intangibles such as the honest and faithful performance of duties. *See United States v. Barber*, 668 F.2d 778, 784 n.4 (4th Cir. 1982). It is generally established that a physician has a duty to inform a patient of a correct

12

diagnosis and failure to provide the patient with his true diagnosis is a breach of that duty. *See Hook v. Rothstein,* 281 S.C. 541, 547, 316 S.E.2d 690, 694-95 (Ct. App. 1984) (noting that under the doctrine of informed consent, a physician has a duty to disclose "(1) the diagnosis, (2) the general nature of the contemplated procedure, (3) the material risks involved in the procedure, (4) the probability of success associated with the procedure, (5) the prognosis if the procedure is not carried out, and (6) the existence of any alternatives to the procedure."); *see also,* 61 AM. JUR. 2D *Physicians, Surgeons, Etc.* § 212. While there are legitimate uses for risk management systems and the creation of such a system cannot be said to be illegal in and of itself, the transmission of the information from such system through wire and mail for the purpose of depriving a patient of a true diagnosis could form the basis of a predicate act sufficient to meet the requirements of the RICO Act.

Although Defendants deny any disreputable purpose in transmitting Plaintiff's medical records, the court must liberally construe the well-pleaded complaint in Plaintiff's favor. Therefore, Plaintiff has alleged acts that relate to one another through shared purpose, participants, and victims occurring over a sufficient continuity of time to establish a pattern of racketeering.

### B. Existence of an Enterprise

Defendants next argue that Plaintiff's RICO claim fails because he cannot show the existence of a RICO enterprise.

Under RICO, an "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4). A RICO enterprise is characterized by "continuity, unity, shared purpose and identifiable structure." *United States v. Fiel*, 35 F.3d 997, 1003 (4th Cir. 1994) (internal citations and quotation marks omitted). The enterprise is not defined by the pattern of racketeering

13

activity, but must exist separate and apart from the pattern of racketeering activity in which it engages. *United States v. Turkette*, 452 U.S. 576, 583 (1981).

According to Defendants, TLC Vision Corp. cannot be the RICO enterprise. However, Plaintiff makes reference in the Amended Complaint to the intricate manner in which TLC Vision Corp. controls the TLC LASIK Centers and the management structure utilized throughout the TLC Vision Corp. operations. Specifically, Plaintiff alleges that TLC Vision Corp. set up the TLC LASIK Centers in various locations in the United States and hired licensed optometrists as clinical directors to coordinate business operations and oversee Lasik surgeries. Amended Complaint at ¶¶ 17-21. Taking Plaintiff's well-pleaded allegations as true, including all reasonable inferences therefrom, it is concievable that these allegedly associated entities constitute a RICO enterprise.

Defendants contend that Plaintiff failed to allege that all Defendants are separate and distinct from the enterprise. Although Plaintiff's pleading may have some shortcomings as to TLC Vision Corp.'s relationship to the TLC LASIK Centers, Plaintiff has set forth a clear distinction between TLC Vision Corp. and the TLC LASIK Centers as enterprises and the separate actions of TLC Management, TLC Clinical Directors, and TLC LASIK Surgeons in conducting the affairs of the enterprises. Any individual "who conducts the affairs of a corporation through illegal acts comes within the terms of a statute that forbids any "person" unlawfully to conduct an "enterprise," particularly when the statute explicitly defines "person" to include "any individual ... capable of holding a legal or beneficial interest in property," and defines "enterprise" to include a "corporation."' *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001).

Therefore, the court finds that Plaintiffs successfully plead the existence of a RICO enterprise.

### C.  Showing of Damages for Standing

Defendants further argue that Plaintiff fails to show proper damages to meet the standing requirements of a civil RICO claimant.  While Plaintiff may have met the requisite threshold of pleading a pattern of racketeering activity and demonstrating the establishment of an enterprise, the court agrees that Plaintiff does not possess the necessary standing to pursue his RICO action.

The civil RICO statute provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue . . . in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c).  A private RICO plaintiff must  show damage to "business or property" proximately caused by the defendant's RICO violation to have standing to bring suit.  *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 264 (4th Cir. 2001).  "A defendant who violates section 1962 is not liable for treble damages to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured." *Sedima, S.P.R.L.*, 473 U.S. at 496-97 (internal citations omitted). Allegations of personal injuries and the pecuniary losses incurred therefrom do not qualify as injury to "business or property." *Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995).

Defendants argue that Plaintiff does not have standing to bring this RICO claim because he cannot show an injury to his business or property.  Specifically, Defendants contend that Plaintiff's claims of injuries arising from the conversion of his medical records do not produce the type of injuries for which a RICO action is intended and that the injuries Plaintiff alleges are actually personal injuries which are not recoverable under RICO.   The primary focus of Defendants'

arguments is that the physical medical records are property of the physician and Plaintiff has no property interest in them whatsoever.

Plaintiff, however, contends that he is not making any claim for personal injuries and that he has a protectable property interest in his medical information. He further alleges that Defendants mistakenly focus on the physical medical file instead of the information collected and created from the treatment of the patient.[4] Plaintiff takes the position that there is a distinction between the interest in a physical file and the information contained in a file and that it is Defendants' conversion or wrongful use of Plaintiff's property interest in the underlying medical information which gives rise to a cognizable RICO injury. Specifically, Plaintiff seeks recovery for 1) conversion of his property resulting in the loss of income and costs associated with obtaining the return of and restraining any further misuse of his property; and 2) the monetary amounts paid for unnecessary surgeries.

Plaintiff's argument that he has a protectable interest in his medical information has some appeal. It is well-established that patients have certain rights in obtaining truthful diagnoses. *See Hook,* 281 S.C. at 547, 316 S.E.2d at 694-95. South Carolina law also protects a patient's right to access the information contained in the medical files maintained by physicians despite the grant of ownership in the actual physical file to the physician. *See* S.C. Code Ann. §§ 44-115-20; 44-115-30 (2009).[5] However, the question before the court today is whether a patient has any property interest

---

[4]Plaintiff admits that South Carolina statutory law gives physicians ownership rights in the medical files of their patients. *See* S.C. Code Ann. § 44-115-20.

[5]The South Carolina Code also provides that a physician's "unreasonable refusal to release the *entire medical record* constitutes unprofessional conduct and subjects the physician to disciplinary action." S.C. Code Ann. §§ 44-115-60 (emphasis added). However, the code does not define the scope of "medical record" and both parties have ostensibly assumed that the term is

in medical information such that the denial of access to or concealment of such information could form the basis of a RICO injury. After carefully reviewing the available authorities, this court finds that a patient's interest in medical information is an intangible property interest - the conversion of which does not precipitate an injury to business or property sufficient to confer standing under RICO.

Courts in the Fourth Circuit have not addressed this matter. The District Court for the Western District of Pennsylvania examined a case which is instructive to the matter at hand. In *Vavro v. Albers*, 2006 WL 2547350 (W.D. Pa. Aug. 31, 2006)*,* the plaintiff claimed to suffer from toxic solvent encephalopathy ("TSE") which he attributed to alleged chronic and uncontrolled exposure to chlorinated solvents while working for A.K. Steel Corporation in Butler, Pennsylvania. After filing an unsuccessful claim for workers' compensation benefits, the plaintiff brought a suit in federal court alleging, *inter alia*, a state law claim for conversion and a civil RICO claim. The crux of plaintiff's claims centered upon the alleged gathering and use of his private medical information ("PMI") for research in a publication and other purposes, including to allegedly conceal the cause of his illness and provide a defense for A.K. Steel Corporation in his worker's compensation claim, without his consent. The plaintiff contended that such alleged use constituted conversion and that such conversion "*caused him to sustain injury to his property interest in his PMI.*" *Id.* at 21. The types of injuries claimed by the plaintiff included such items as the costs of continuing health care over his lifetime; and amounts for personal and financial injuries including damages for "intentionally inflicted distress," "physical pain and mental distress," "diminished

---

limited to certain documents. Because Plaintiff is clearly referring to the whole body of information collected or created from a physician's treatment of a patient regardless of where it is recorded and stored, the court need not address this matter in resolving the motions currently before it.

capacity to enjoy life," "sustained loss of income, a diminished earning capacity, and other substantial economic losses."

In making the "injury" analysis for RICO standing, the court noted, "all of the injuries Plaintiff claims to have suffered constitute either personal injuries (intentionally inflicted distress, physical pain and mental distress, a diminished capacity to enjoy life, intentional infliction of emotional distress, denial of medical treatment and care), or financial injuries that derive from the alleged personal injuries (i.e., incurred medical bills for treatment and care, loss of income, diminished earning capacity, and other substantial economic losses), none of which are deemed compensable under RICO." *Id*. As an additional ground for dismissal, the court found that, "Plaintiff's property interest in his PMI. . . . is normally not the type of property which, when injured, is capable of incurring a concrete financial loss, and therefore, is insufficient to create RICO standing." *Id*. The court determined that "Plaintiff's alleged injury to his property interest in his PMI is, at best, merely an injury to a valuable intangible property interest, the damage to which is speculative and incapable of quantification. Further, Plaintiff's claimed injuries of out of pocket medical expenses, lost income, diminished earning capacity, although capable of valuation, all derive from his alleged TSE and the denial of his workers' compensation claim, not an alleged injury to his intangible property interest in his PMI. Therefore, Plaintiff's alleged injuries are not the type of "injury" that creates RICO standing.

Here, Plaintiff alleges two categories for recovery. First, Plaintiff claims that he has incurred costs and attorney's fees to protect and recover his medical information. *See* Plaintiff's Mem. at 11 [Doc. 303]. Under RICO, costs and attorneys fees are mandatory elements of recovery for a successful plaintiff and are separate from the analysis of injury to "business or property." *See* 18

18

U.S.C. § 1964(c). Secondly, Plaintiff claims that he has lost the monetary amounts paid for unnecessary surgeries. In the Amended Complaint, Plaintiff alleges that a TLC Center initially performed on him Lasik surgery for which he was contraindicated. He further alleges that *prosepective* patients were offered Lifetime Commitment Contracts ("LTC") as an inducement to engage TLC to perform the Lasik surgery and that the LTC covered the cost of additional treatments needed after the initial Lasik surgery. Amended Complaint at ¶¶ 26-27. Plaintiff also alleges that "[a]s a consequence of the surgeries, Ben Dickerson and all others similarly situated began developing vision problems *directly caused by the LASIK surgery*." Amended Complaint at ¶ 39. (emphasis added). Based on the allegations of the Amended Complaint, Plaintiff's loss of money for amounts paid for unnecessary surgeries derives from the performance of the initial surgery and the alleged failure to properly inform Plaintiff of his proper diagnoses, not Defendant's creation of and internal use of databases which were undisclosed to Plaintiff. Therefore, Plaintiff's claim of conversion of his medical information and damages allegedly arising therefrom do not amount to injuries in business or property. While Plaintiff has submitted a well-pleaded complaint, no cause of action for violation of RICO can exist here because there can be no injury to Plaintiff's business or property under the facts as alleged.

Furthermore, the court is unpersuaded that a plaintiff may maintain a civil RICO action on the basis of an injury founded simply in the alleged "conversion" of medical records or medical information. "Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights." *Crane v. Citicorp Nat'l Servs., Inc.*, 313 S.C. 70, 73, 437 S.E.2d 50, 52 (1993). "Conversion may arise by some illegal use or misuse, or by illegal detention of another's

personal property." *Regions Bank v. Schmauch*, 354 S.C. 648, 667, 582 S.E.2d 432, 442 (Ct. App. 2003). The South Carolina Supreme Court has expressed reluctance "to expand the tort of conversion as it relates to intangible property and conclude[d] that it should be limited to intangible property rights that are identified with some document." *See Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 385 S.C. 452, 466, 684 S.E.2d 756, 763 (2009). Claims for the conversion of medical records have been treated similarly in other jurisdictions. *See Valvo*, 2006 WL 2547350 at 15. (finding that "a property interest in medical information is an intangible right that is not customarily merged in or identified with some document, and therefore, cannot be the subject of a conversion claim"); *see also, Hanson v. Hancock County Mem'l Hosp.*, 938 F. Supp. 1419, 1438 (N.D. Iowa 1996) (court rejected plaintiff's argument that privacy interest in hospital patient information constituted protected intangible personal property finding there was no authority for finding that plaintiff's privacy interest was in fact a property right, and in any event, it was not a property right that is "customarily merged in, or identified with, some document") (quoting *Hurst v. Dezer/Reyes Corp.*, 82 F.3d 232, 235-36 (8th Cir. 1996)) (other citations omitted); *Rao v. Verde*, 222 A.D.2d 569, 635 N.Y.S.2d 660, 661 (N.Y. App. Div. 1995) (holding that information obtained from medical records was intangible and therefore could not be the subject of a conversion claim).

Given that conversion of Plaintiff's medical information is not a legally cognizable action under South Carolina law and that Plaintiff has failed to demonstrate any concrete, quantifiable injury to his business or property, Plaintiff does not have standing to pursue his RICO claim, even under the well-pleaded facts of the Amended Complaint. Accordingly, the court grants Defendants' Motions to Dismiss Plaintiff's cause of action under the RICO statute.

**D. Conspiracy**

Defendants claim Plaintiff has not stated a RICO conspiracy claim. Where the pleadings do not state a substantive RICO claim under § 1962(c), a plaintiff's RICO conspiracy claim fails as well. *See GE Investment Private Placement Partners II v. Parker*, 247 F.3d 543, 551 (4th Cir. 2001) (citing *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (1st Cir. 2000), *cert. denied*, 532 U.S. 905 (2001)).

Because the court finds that Plaintiff has failed to state a substantive RICO claim, the court also grants Defendants' Motions to Dismiss Plaintiff's RICO conspiracy claim.

**II.    Declaratory and Injunctive Relief**

Plaintiff requests an order from the court seeking the following relief: (1) that Plaintiff and the putative class members are entitled to full disclosure of all medical records, including medical opinions and findings in the alleged "illegal databases"; (2) that Defendants are enjoined from further use of the "fraudulent database"; (3) that Defendants are enjoined from violations of HIPAA and dissemination of medical records among Defendants without consent; and (4) that Defendants are required to return all of the class members' medical records which were allegedly converted by Defendants. Defendants argue that Plaintiff's claims for declaratory and injunctive relief should be dismissed because the allegations of Plaintiff's Amended Complaint do not establish a justiciable controversy over which the court has jurisdiction nor has Plaintiff stated a claim.

Plaintiff's claim for a declaration of entitlement to disclosure of medical records is ill suited for resolution as postured. Instead, Plaintiff's request for disclosure is one that should be resolved in a discovery motion where the court may properly consider all factors relevant to disclosure

including, but not limited to, the rulings of the state court concerning the databases and standing issues.

As to Plaintiff's request for injunctive relief, the court finds Plaintiff has not sufficiently pled a cause of action requiring the remedy of injunctive relief. "An injunction is a drastic remedy and will not issue unless there is an imminent threat of illegal action." *Bloodgood v. Garraghty*, 783 F.2d 470, 475 (4th Cir.1986). A plaintiff must plead a cause of action entitling him to injunctive relief, not just request injunctive relief in the abstract.

Here, Plaintiff has made conclusory allegations that Defendants' creation of the databases is illegal and that sharing the patient information among the related entities is a violation of the Health Insurance Portability and Accountability Act ("HIPAA"). However, Plaintiff's Amended Complaint does not contain any allegations of a violation of any statute which renders such information collection illegal nor does it contain any assertion of a private right of action under HIPAA.

Because Plaintiff has failed to plead a cause of action entitling him to injunctive relief, the court grants Defendants' request to dismiss this claim of the Amended Complaint.

### III.     Statute of Limitations.[6]

Defendants claim Plaintiff's RICO claim is barred by the statute of limitations. Plaintiff denies that any applicable limitations period can be determined from the face of the Amended

---

[6]Certain Defendants also contend that Plaintiff's claims are barred by the six-year statute of repose applicable to medical malpractice actions brought under South Carolina law. Plaintiff concedes that this is not a medical malpractice action and no Defendant argues that the state law statute of repose is applicable to Plaintiff's federal civil RICO claims. Therefore, the court need not address whether Plaintiff's claims are also barred by the statute of repose.

Complaint and, further that even if any limitations period can be determined, such period should be equitably tolled due to Defendants' fraudulent concealment of their conduct.

The RICO statute does not contain an express statute of limitations. However, the Supreme Court has established a four-year statute of limitations applicable to civil RICO actions. *See Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987). In determining when the statute begins to run, the Court adopted the discovery accrual rule. Accordingly, the statute of limitations begins to run when the plaintiff knows or should know of the existence of a RICO injury, not discovery of the other elements of a claim such as the underlying pattern of racketeering activity. *See Rotella v. Wood*, 528 U.S. 549, 555-56 (2000) (stating that the discovery rule for a RICO injury is analyzed in the same manner as the discovery rule for medical malpractice). This is true even if the pattern of racketeering activity includes fraud. *Id*. at 557. In cases where the RICO claim is based on fraudulent concealment, a plaintiff must use reasonable diligence to discover the claim. *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 194-95 (1997).

Equitable tolling may extend the statute of limitations period applicable to RICO actions. *See Pacific Harbor Capital, Inc. v. Barnett Bank, N.A.,* 252 F.3d 1246 (11th Cir. 2001); *Grimmett v. Brown*, 75 F.3d 506 (9th Cir. 1996); *Bontkowski v. First Nat. Bank of Cicero*, 998 F.2d 459 (7th Cir. 1993). To toll the limitations period, a plaintiff must show that he exercised due diligence to discover his cause of action prior to the running of the statute and that the defendant was guilty of some affirmative act of fraudulent concealment which frustrated discovery notwithstanding such diligence. *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 595-96 (4th Cir. 1976). Fraudulent concealment may exist where a defendant's misconduct has induced or tricked the plaintiff into allowing the filing deadline to pass. *See Chao v. Virginia Department of*

23

*Transportation*, 291 F.3d 276, 283 (4th Cir. 2002) (citing *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990)). When the doctrine of equitable tolling applies, the statute of limitations period does not begin to run until the plaintiff discovers the fraud. *See Supermarket of Marlinton, Inc. v. Meadow Gold Diaries, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995).

However, courts should use equitable tolling only in exceptional circumstances, and not as a routine method of preserving a plaintiff's stale cause of action. *See Rotella*, 528 U.S. at 561. The application of equitable tolling is not always clear, particularly in circumstances where the cause of action itself includes an element of fraud. This is often the case in RICO actions. "A 'pattern of predicate acts may well be complex, concealed, or fraudulent,' but those characteristics of a RICO action are not enough to toll the statute of limitations." *See Pacific Harbor Capital, Inc. v. Barnett Bank, N.A.,* 252 F.3d 1246, (11th Cir. 2001) (citing *Rotella*, 528 U.S. at 556). The RICO plaintiff which is the victim of fraudulent conduct has the obligation to take steps to discover the pattern responsible for his injury with diligence and, like a medical malpractice victim, cannot wait for a chance revelation that the defendant's actions contributed to his injury. *Id. See accord, Grimmett*, 75 F.3d at 514-15 (dismissing RICO complaint on limitations grounds and finding that a "failure to 'own up' does not constitute active concealment" sufficient to warrant tolling where plaintiff did not exercise diligence to discover her claim).

Assuming, arguendo, that Plaintiff's claimed damages concerning the conversion of his medical records could qualify as an appropriate RICO injury, Plaintiff's claim would be barred by the statute of limitations. Although Plaintiff claims that the face of his Amended Complaint reveals no dates of conversion, he clearly makes a case that Defendants initially "converted" his medical records to their own use beginning as early as February 1999, and continued to use his medical

records in the course of their alleged racketeering scheme through May 2005. Although Plaintiff's cause of action under the RICO statute was complete and could have been brought as early as August 1999, when Defendant Machat allegedly completed the second predicate act of mailing Plaintiff's medical records to Defendant TLC Laser Eye Center (Institute), Inc. in "furtherance of their conspiracy," Plaintiff's RICO claim certainly accrued by May 2005. This action was not initiated until March 2010 and Plaintiff's claims were not raised until May 2010, well after the expiration of the statute of limitations. However, Plaintiff argues that equitable tolling is applicable to his claims against Defendants based on their allegedly fraudulent and intentional conduct.

As explained in Defendants' Memorandum in Support of Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 213] and supporting documentation [Doc. 212],[7] Plaintiff's first Lasik surgery occurred in 1998. Plaintiff had a second surgery in 1999. After Plaintiff's second surgery, he remained displeased with the results and returned to the local TLC Center complaining of

---

[7]As a procedural note, Defendants filed a copy of Plaintiff's medical records under a Motion to Seal [Doc. 212] as an attachment to its Motion to Dismiss. The general rule is that when matters outside the pleadings are presented to the court on a 12(b) motion, that motion must be treated as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). The Fourth Circuit has held that a court may consider material outside the complaint in evaluating a motion to dismiss where such material is integral to and explicitly relied upon in the complaint and where the plaintiff does not challenge the authenticity of the material. *See Am. Chiropractic v. Tricron Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004). Plaintiff has not challenged the authenticity of the records, but does argue against the court's reliance on them in determining Defendants' motions. In this case, Defendants' attachment may be considered without converting their motion to dismiss into a motion for summary judgment. However, the court is expressly relying only upon the face of the Amended Complaint in granting Defendants' motions and only references Plaintiff's medical records and Defendants' arguments regarding those records as they relate to Plaintiff's equitable tolling argument. The court also notes that, outside of the allegations regarding the RICO predicate acts, Plaintiff did not plead with particularity any argument for fraudulent concealment in his Amended Complaint, *see Iqbal*, 129 S. Ct. at 1949, Fed. R. Civ. P. 9(b), but waited until his response in opposition to Defendants' Motions to Dismiss to first make his equitable tolling claim.

decreased visual capacity.  Plaintiff's vision continued to deteriorate, yet he did not seek additional

care from the TLC Center and did not seek his medical records from the TLC Center.  Had Plaintiff

investigated the reason for his deteriorating vision, he may have discovered Defendants' alleged

efforts to conceal his true diagnosis or, at least, demonstrated the requisite diligence to preserve an

equitable tolling argument.

Because Plaintiff failed to bring his RICO claim within four years of the accrual of his injury

and because Plaintiff did not pursue his claim with reasonable diligence, the court grants Defendants'

Motion to Dismiss based on the statute of limitations.[8]

### CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss [Docs. 27, 63, 75, 124, 128, 209,

213, 247, 248, 255, 281, 291, and 300] are **GRANTED**.

**IT IS SO ORDERED.**

s/ J. Michelle Childs
United States District Judge

Greenville, South Carolina
February 3, 2011

---

[8]The court's statute of limitations and equitable tolling analysis is made in reference to the named Plaintiff and his alleged facts as applied to the specific causes of action addressed in this order.  The court makes no determination regarding the running or tolling of any prospective class plaintiff's cause(s) of action.